**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:23 CR 175 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **ANTHONY FIMOGNARI,** | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Defendant Anthony Fimognari's Motion to Vacate under 28 U.S.C. § 2255. (Doc. 59). The Government filed a response in opposition. (Doc. 61). Fimognari replied. (Doc. 62-6). For the reasons set forth below, the Court denies Defendant's motion.

## BACKGROUND

On February 24, 2023, Fimognari was charged in a criminal complaint with coercion or enticement in violation of 18 U.S.C. § 2422. (Doc. 1). He was subsequently indicted on the same charge on March 23, 2023. (Doc. 14). The charges arose out of an investigation in which Fimognari engaged in online messaging with an undercover agent posing as a 14-year-old girl, detailed various sex acts he wanted to engage in with the girl, and ultimately attempted to meet her in person. *See* Doc. 48, at 7-9; Doc. 57, at 4.

On March 4, 2024, Fimognari pled guilty to the Indictment pursuant to a written plea agreement under Federal Criminal Rule 11(c)(1)(C). (Doc. 53) (transcript of change of plea hearing); *see also* Doc. 48 (plea agreement). Pursuant to the plea agreement, the parties agreed to

a binding term of 120 months imprisonment (the mandatory minimum). (Doc. 48, at 5). The plea agreement did not contain any agreement as to the term of supervised release and, under the list of statutory penalties, identified the maximum period of supervised release as "Life." *Id.* at 2; *see also id.* at 5 ("[T]he parties agree that the appropriate disposition of this case is for Defendant to receive a sentence that *includes* a specific sentence of 120 months imprisonment.") (emphasis added). The plea agreement further contained the following provision:

> 25. **The Parties are Free to Advise the Court about Matters Not Expressly Addressed**. This agreement is silent about all aspects of the determination of sentence not expressly addressed herein, and the parties are free to advise the Court of facts and to make recommendations to the Court with respect to all aspects of sentencing not agreed to herein.

*Id.* at 9. Fimognari initialed each page of the plea agreement, signed it, and testified under oath that he understood it. *See id.*; Doc. 53, at 30-31. He further testified he was not promised anything other than what was contained within the plea agreement. *Id.* at 32.

The initial presentence report ("PSR") stated the statutory provision required a supervised release term "of five years to life." (Doc. 40, at 15). Fimognari submitted no written objections related to this provision. Subsequent versions of the PSR, including the final revised version, contained the same provision. *See* Doc. 44, at 15; Doc. 57, at 15.

At his change of plea hearing, the prosecutor summarized the maximum penalties at issue, including the "maximum period of supervised release of life." (Doc. 53, at 12). Fimognari confirmed this was consistent with his understanding. *Id.* The Court further explained the plea agreement was "an agreement to a specific period of incarceration;" Fimognari again confirmed his understanding that, if accepted, the plea agreement would govern his sentence. *Id.* at 20-21. Plaintiff further confirmed the factual basis for the plea agreement was accurate. *See id.*, at 29; Doc. 54, at 7-9.

Pursuant to the Final Revised PSR, Fimognari's Guidelines range was "[b]ased upon a total offense level of 34 and a criminal history category of V," leading to a "guideline imprisonment range [of] 235 months to 293 months." (Doc. 57, at 15).

At the June 25, 2024 sentencing, the Court accepted the plea agreement and sentenced Fimognari to a term of 120 months in prison, followed by a term of life of supervised release. (Doc. 46, at 2-3).; *see also* Doc. 54 (transcript of sentencing hearing).[1]

On December 16, 2025, Fimognari filed the present Motion to Vacate. (Doc. 59). He asserts two grounds for relief: a Sixth Amendment ineffective assistance of counsel claim and a Fifth Amendment due process claim. *See id.* at 4-5; *see also* Doc. 59-1.

## Standard of Review

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside[,] or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes the "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack[.]" *Id.* at § 2255(b). To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *see also Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999).

A prisoner seeking relief under § 2255 must show as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

1. Fimognari timely appealed. (Doc. 49). Through his appellate counsel, Fimognari later filed a motion to voluntarily dismiss his appeal. *See United States v. Fimognari*, No. 24-3573 (6th Cir. Dec. 5, 2024). The Sixth Circuit granted the motion the following day. *See id.* (Dec. 6, 2024).

fact or law that was so fundamental as to render the entire proceeding invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citation modified). To obtain relief for an error of constitutional magnitude, a petitioner must establish that error "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional claim, a petitioner must establish a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of the "rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citation omitted); *see also id.* at 354.

In considering a petition under § 2255, the district court is required to conduct an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The petitioner's burden for obtaining a hearing is relatively light. *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). But "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Where the judge considering the § 2255 petition also conducted the proceedings below, the judge may rely on his or her recollections of those proceedings. *See id.*

## DISCUSSION

<u>Ground One</u>

In his first ground for relief, Fimognari contends his trial counsel was ineffective, stating: his "counsel was ineffective and did not explain [his] rights." (Doc. 59, at 5). He elaborates that

he "[w]as not advised to include a negotiation on [his] probation as well as [his] sentence" and states he was told he "would never get life probation." (Doc. 59-1, at 1). He further asserts he was "told of another possible charge pending," but "no evidence was offered or mentioned" and he was then encouraged to make a plea deal. *Id.* Fimognari avers that had he known he could get supervised release for life, he would not have pled guilty and would instead have insisted on going to trial. (Doc. 59-1, at 1); *see also* Doc. 62-7, at 1.

An ineffective assistance of counsel claim requires proof the defendant's attorney provided deficient representation and that the attorney's deficient performance caused the petitioner to suffer prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance may be found to be deficient if it is "objectively unreasonable under prevailing professional norms." *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 688).

A petitioner also must show any error defense counsel allegedly committed was material. "To show prejudice in the guilty-plea context, a defendant 'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.'" *Id.* at 534. (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Fimognari's statements that he was unaware that he could get lifetime supervised release or that he was promised otherwise are belied by the record. Fimognari was informed during his change of plea hearing that the maximum term of supervised release was life and he confirmed he understood such provision. (Doc. 53, at 12). The plea agreement itself, which Fimognari signed and confirmed he understood, further evidenced the maximum supervised release term of life and contained no agreement to the contrary. *See* Doc. 48; Doc. 53, at 30-32. And during the

change of plea hearing, Fimognari confirmed he had received no promises other than what was contained in the plea agreement. *See* Doc. 53, at 32.

"Absent extraordinary circumstances, a defendant is bound by his statements during a plea colloquy when the district court has scrupulously followed the procedures for taking the defendant's guilty plea." *Ewing v. United States*, 651 F. App'x 405, 409 (6th Cir. 2016) (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)); *see also Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) ("[A] defendant must be bound to the answers he provides during a plea colloquy."). "[A] claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy." *Ramos*, 170 F.3d at 565. Reliance on the defendant's after-the-fact claims of misrepresentation and a lack of understanding instead of the record of plea proceedings would "render[ ] the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite." *Id.* at 566. Thus, in *Ramos*, the Sixth Circuit found "[e]ven under the assumption that Ramos has established deficient performance, he cannot establish that this alleged promise by [counsel] caused him prejudice" because "when a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice when the court specifically informed him that his counsel's advice was incorrect." *Id.* at 565. The same is true here. Fimognari's allegation that he was promised he would not receive lifetime supervised release is both belied by the record and cannot have prejudiced him because he was informed otherwise during the change of plea.

Even assuming Fimognari had not been informed otherwise, he would not be entitled to relief. A habeas petitioner "cannot make [the prejudice] showing merely by telling [the court] now that [he] would have gone to trial then if [he] had gotten different advice." *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012). "The test [for prejudice on an ineffective assistance of counsel claim] is objective, not subjective; and thus 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). "The rationality of such a rejection is typically based on multiple factors, including the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain." *Plumaj v. Booker*, 629 F. App'x 662, 667 (6th Cir. 2015); *see also Pidgeon v. Smith*, 785 F.3d 1165, 1173 (7th Cir. 2015) ("The terms of a plea deal are admittedly relevant in assessing the credibility of a petitioner's claim that he would have gone to trial had he received correct information at the plea-bargaining stage.").

Here, the evidence against Fimognari was strong, weighing against a finding of prejudice. *See* Doc. 57, at 4 (summarizing offense conduct and evidence). And by virtue of the plea agreement, he received a sentence (120 months) substantially below the recommended Guideline sentence absent the plea agreement's terms if convicted (235 to 293 months). Such a favorable plea agreement also weighs against a finding of prejudice. Indeed, at the time of sentencing, the Court explained it had grappled with whether to accept the agreement given that it "notably [drove] the sentence in this case significantly down," was a "far cry" from what the guideline recommended sentence would be, and was a "breathtakingly large variation from the guideline." (Doc. 54, at 3, 12, 14). The Court finds Fimognari has not established that "a decision to reject the plea bargain would have been rational under the circumstances," and therefore he

cannot show prejudice. *Pilla*, 668 F.3d at 373 (quoting *Padilla*, 559 U.S. at 372); *see also United States v. Shephard,* 956 F.2d 1164 (6th Cir. 1992) ("Finally, Pinales' failure to advise appellant of the term of supervised release that would attach to his period of incarceration prior to the Rule 11 hearing did not constitute ineffective legal performance since appellant failed to prove that he had been prejudiced by his counsel's omission, i.e., but for the omission he would not have pleaded guilty.").

Ground Two

In Ground Two, Fimognari cites Fifth Amendment due process, as well as ineffective assistance of counsel. *See* Doc. 59, at 5. He elaborates: "Sentencing guidelines were under or equal to mandatory minimum at first. When PSR came back guidelines were much higher with no additional enhancement explained. Reason being, the PSR first draft was submitted before it was corrected. This could have biased judge." (Doc. 59-1, at 2). He further complains the first draft of the PSR was submitted to the Bureau of Prisons, impacting his custody status, and the Justice for Victims of Trafficking Act ("JVTA") assessment was incorrectly applied. *Id.*

First, as to Fimognari's claim that the undersigned "could have [been] biased" by the PSR before it was revised, the Court agrees with the Government that Fimognari has presented no evidence to support such a claim. *See Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) ("[C]onclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.") (quoting *United States v. Maya*, 676 F.3d 1211, 1213 (10th Cir. 2012)). And again, as above, the Court accepted a plea agreement that greatly reduced Fimognari's term of imprisonment as compared to the guideline range.

Second, as to the JVTA assessment, Fimognari cannot establish this is a cognizable basis for habeas relief. As the Sixth Circuit explained:

> But the plain terms of § 2255 tell us that we may not use the statute to correct errors that cannot affect a petitioner's "release[ ] from custody." *Watroba*, 56 F.3d at 29. And "[a] monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for § 2255 purposes." *Id.* (citation omitted); *see also Sevier v. Turner*, 742 F.2d 262, 269 (6th Cir. 1984) ("[A] fine imposed in a criminal case does not create custody for purposes of §§ 2241 and 2254."). If a fine is not "custody," then a petitioner seeking nothing more than relief from an obligation to pay a monetary assessment is not "claiming the right to be released" from custody and is not entitled to relief under § 2255. *See United States v. Ross*, 801 F.3d 374, 382 (3d Cir. 2015) ("Because we believe the burden of a special assessment—even one imposed in conjunction with a wrongful conviction—does not amount to 'custody,' Ross is not 'claiming the right to be released' from 'custody' and his special assessment cannot serve as the basis for a claim under section 2255."). So the district court did not err by denying Amaya's claim for relief.

*Amaya v. United States*, 71 F.4th 487, 490 (6th Cir. 2023).

Fimognari argues counsel was ineffective in telling him "the JVTA assessment was something 'everyone got.'" (Doc. 62-6, at 1). He contends he was not "told that it was an assessment for victims of trafficking" and it should not have been levied because he "had no victim and no trafficking." *Id.* But Fimognari cannot establish either deficient performance or prejudice for such a claim. First, as to performance, although the JVTA contains the word "Trafficking" in its title, it applies more broadly and covers the crime of which Fimognari was convicted. *See* 18 U.S.C. § 3014(a)(4); 18 U.S.C. § 2422(b). Thus, he cannot establish deficient performance based on the cited advice. Nor can he show prejudice for the reasons set forth above.[2]

---

2. The record in this case demonstrates conclusively Fimognari is not entitled to relief. *See, e.g.*, *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) ("In . . . § 2255 proceedings, evidentiary hearings are not required when, as here, the record conclusively shows that the petitioner is entitled to no relief.") (citing *Fontaine v. United States*, 411 U.S. 213, 215 (1973)); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding a district court "is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Fimognari's Motion to Vacate (Doc. 59) be, and the same hereby is, DENIED;

FURTHER ORDERED that, because Fimognari has not made a substantial showing of a denial of a constitutional right directly related to his conviction or custody, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: November 23, 2026

because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact") (citing *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).